**KIPP & ALLEN, LLP**
**By:  Richard J. Allen, Jr. Esq. Attorney No. 023041981**
**52 Chestnut Street**
**P. O. Box 133**
**Rutherford, New Jersey 07070**
**(201) 933-3633**
**Attorneys for Defendant New England Linen Supply Company, Inc.**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **MICHAEL VICCHAIRELLI,** | : | **Civil Action No.:  1:19-CV-12989 JHR-** |
| | : | **KMW** |
| | : | |
| **Plaintiff,** | : | Civil Action |
| | : | |
| v. | : | **BRIEF IN SUPPORT OF** |
| | : | **DEFENDANT'S MOTION FOR** |
| | : | **SUMMARY JUDGMENT** |
| | : | |
| **NEW ENGLAND LINEN** | : | |
| **SUPPLY COMPANY, INC.,** | : | **DOCUMENT FILED** |
| | : | **ELECTRONICALLY** |
| | : | |
| **Defendant.** | | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

SUMMARY OF UNDISPUTED FACTS ........................................................................ 2

    I.       STANDARD ON MOTION FOR SUMMARY JUDGMENT ................................... 7

    II.     PLAINTIFF'S CLAIM MUST FAIL, AS THE UNDISPUTED FACTS
DEMONSTRATE THAT THE CONDITIONS PRECEDENT TO THE REPURCHASE OF
PLAINTIFF'S SHARES WERE NOT SATISFIED, AS A RESULT OF PLAINTIFF'S OWN
CRIMINAL CONDUCT.................................................................................................. 9

        a.  The undisputed material facts demonstrate that repurchase of the Vicchairelli Stock
           was not "consistent with [NELS's] own cash requirements." .................................... 11

i

    b.  It is inconceivable that NELS's lenders would consent to the repurchase of Plaintiff's shares, in light of Plaintiff's criminal conduct and NELS's precarious financial position ............................................................................................................... 14

III.    SUMMARY JUDGMENT IN FAVOR OF NELS IS WARRANTED, AS PLAINTIFF'S CLAIM IS BARRED BY THE DOCTRINES OF UNCLEAN HANDS AND EQUITABLE FORFEITURE ............................................................................................... 18

    a.  As Plaintiff is admittedly guilty of engaging in fraud in the course of his employment, and NELS was unaware of such conduct when entering into the Separation Agreement, Plaintiff's claim must be barred by the doctrine of unclean hands. ........ 19

    b.  Plaintiff's claim should similarly be barred by the doctrine of equitable forfeiture, as Plaintiff engaged in a pattern of fraud from January 2012 through August 2014, and his compensation was effectively unearned during that time. .................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) ............................................................ 8

<u>Cameco, Inc. v. Gedicke</u>, 157 N.J. 504 (1999) .................................................................... 22

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ...................................................................... 8

<u>First Atl. Leasing Corp. v. Tracey</u>, 738 F. Supp. 863 (D.N.J. 1990) ................................... 12

<u>Hageman v. 28 Glen Park Assoc., L.L.C.</u>, 402 N.J. Super. 43 (Ch. Div. 2008) ................... 20, 21

<u>Jay Dad Assocs., L.L.C. v. C&G Mgmt. Corp.</u>,
    2009 WL 17940 (N.J. Super. Ct. App. Div. Jan. 2, 2009) (unpublished) .......................... 19, 20

<u>Kaye v. Rosefielde</u>, 223 N.J. 218 (2015) ............................................................................. 22

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) ............................ 7

<u>Mennen Co. v. Atl. Mut. Ins. Co.</u>,
    1999 WL 33654297 (D.N.J. Oct. 26, 1999) (unreported) ................................................. 8

<u>Moorestown Mgmt. v. Moorestown Bookshop, Inc.</u>, 104 N.J. Super. 250 (Ch. Div.1969) .......... 9

<u>Paramount Aviation Corp. v. Agusta</u>, 178 F.3d 132 (3d Cir. 1999) .................................... 19, 20

<u>Phibro Animal Health U.S., Inc. v. Cornerstone AG Prod.</u>,
    2006 WL 2570839 (D.N.J. Sept. 5, 2006) (unreported), amended in part,
    2006 WL 3733022 (D.N.J. Dec. 18, 2006) (unreported), and aff'd, 271 F. App'x 214
    (3d Cir. 2008) (unpublished) .......................................................................................... 7

<u>Reed Elsevier, Inc. v. Inherent.com, Inc.</u>,
    2006 WL 3827414 (D.N.J. Dec. 27, 2006) (unreported) ................................................. 13

<u>Robert Wood Johnson Univ. Hosp. at Hamilton, Inc. v. SMX Capital, Inc.</u>,
    2013 WL 4510005 (D.N.J. Aug. 26, 2013) (unpublished) ............................................... 10

<u>Sansum v. Fioratti</u>, 128 A.D.3d 420 (N.Y. App. Div. 2015) ............................................... 21

Schweikert v. Baxter Healthcare Corp.,
  2015 WL 4578443 (D.N.J. July 29, 2015) (unreported) ............................................... 14

Sevenson Envtl. Servs., Inc. v. Diversified Royalty Corp.,
  2018 WL 5033750 (D.N.J. Oct. 16, 2018) (unreported) .................................... 22, 23

Starland v. Fusari, 2013 WL 12149123 (D.N.J. Nov. 15, 2013) (unpublished) .......................... 19

State Farm Mutual Automobile Ins. Co. v. Anderson, 70 N.J. Super. 520 (App. Div. 1961) ........ 9

Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220 (3d Cir. 1983) ................. 9

Traisman v. Khmelnitsky, 2020 WL 2847751 (D.N.J. June 1, 2020) (unpublished) .................. 10

Uddoh v. Selective Ins. Co. of Am.,
  2014 WL 7404540 (D.N.J. Dec. 29, 2014) (unreported) ........................................... 8

Watson v. City of Salem, 934 F. Supp. 643 (D.N.J. 1995) ...................................... 9, 13

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................. 7

Fed. R. Civ. P. 56(c) ................................................................................................. 7

Fed. R. Civ. P. 56(d) ................................................................................................. 6

Defendant New England Linen Supply Company, Inc. ("NELS" or the "Company") respectfully submits this Brief in support of its Motion for Summary Judgment. The undisputed material facts demonstrate that Plaintiff Michael Vicchairelli ("Plaintiff") engaged in fraudulent conduct during his employment with NELS, embezzling company funds and taking steps to conceal his conduct, a crime for which he pled guilty and served a sentence of imprisonment. As NELS was unaware of such fraudulent conduct prior to Plaintiff's termination, the parties entered into a Separation Agreement pursuant to which NELS agreed to use reasonable commercial efforts to repurchase certain stock owned by Plaintiff, subject to two conditions precedent: 1) to the extent consistent with NELS's own cash requirements and 2) subject to the consent of third parties, to the extent required under NELS's contractual agreements.[1]

---

[1] Plaintiff filed his Verified Complaint (the "Complaint") in this action in the Superior Court of New Jersey, Chancery Division/General Equity Part Gloucester County Division, seeking an order requiring NELS "to provide adequate compensation" to Plaintiff, "in exchange for plaintiff's corporate stock." Compl. (Apr. 23, 2019). NELS removed the matter to this Court on May 28, 2019, and filed an Answer to the Complaint and a Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment. At a Motion Hearing conducted telephonically on March 2, 2020, the Court denied NELS's motion without prejudice, and directed NELS to present an affidavit for Plaintiff to "review…and then determine…what legitimate discovery [Plaintiff] feel[s] would be necessary in order to satisfy the conditions that are being alleged…" Tr. at 41. The Court cautioned that any "discovery would be extremely limited to" the issues of "the conditions that would terminate the effort to have [NELS] buy back the stock," specifically, the "cash requirements and the consent [of third parties] question." Tr. at 30-34.

Upon discovering Plaintiff's criminal conduct – which caused NELS enormous financial harm – NELS received notices of default from its lenders, jeopardizing NELS's lender relationships and placing NELS in a perilous financial situation. As paying $100,000.00 to repurchase Plaintiff's stock was (and remains) inconsistent with NELS's own cash requirements, and as there was virtually no chance that NELS's lenders would consent to such repurchase under these circumstances, there is no legal or equitable basis to require NELS to repurchase Plaintiff's stock. Accordingly, summary judgment is appropriate, as a matter of law.

## SUMMARY OF UNDISPUTED FACTS

The facts relevant to summary judgment are set forth in NELS's Statement of Undisputed Material Facts ("SOF"). A concise summary follows.

Plaintiff Michael Vicchairelli was hired as the Chairman and Chief Executive Officer of the NELS Entities (comprised of Defendant NELS and several related companies) in 2007. SOF ¶ 2. In connection with his employment, Plaintiff was offered the opportunity to invest in the business by purchasing stock of NELS Holdings, Inc. SOF ¶ 4. Accordingly, Plaintiff invested a total of $100,000 and in return received both preferred and common stock (the "Vicchairelli Stock"), memorialized in a Stock Purchase Agreement ("SPA"). SOF ¶ 5. In the event of termination of employment (for any reason), Section 3(a) of the

2

SPA permits, ***but does not require***, NELS Holdings to repurchase the Vicchairelli Stock. <u>SOF ¶ 6</u> ("the Company ***may repurchase*** any or all Shares…") (emphasis added).

NELS terminated Plaintiff's employment in July 2014. <u>SOF ¶ 8</u>.  At the time of his termination, NELS was unaware of any fraud or wrongdoing of any kind by Plaintiff; accordingly, NELS offered Plaintiff a separation agreement that, among other provisions, provided that NELS would "use reasonable commercial efforts" to re-purchase the Vicchairelli Stock, subject to two (2) express conditions precedent:

> The Company agrees to use reasonable commercial efforts, ***to the extent consistent with its own cash requirements*** and ***subject to the consent of third parties to the extent required under the Company's contractual agreements with such third parties***, to acquire such shares in three equal installments…

<u>SOF ¶¶ 9-12</u> (emphasis added). Plaintiff signed the Separation Agreement on August 26, 2014. <u>SOF ¶ 13</u>.

Shortly thereafter, in September 2014, NELS discovered that Plaintiff had engaged in a pattern of criminal conduct from January 2012 through August 2014, causing unauthorized payroll checks to be issued to himself and using the corporate American Express card for personal expenses, including gentleman's lounges, escorts, auto repairs, and restaurants. <u>SOF ¶¶ 19-21</u>. Plaintiff admitted to such "improprieties" via a letter from his counsel dated September 9, 2014 – just

3

days after he signed the Separation Agreement. SOF ¶ 18. Following an

investigation by the United States Attorney for the District of New Jersey, Plaintiff

was charged with "knowingly and intentionally devis[ing] a scheme and artifice to

defraud [NELS]," and pled guilty to the federal crime of wire fraud, admitting that

he defrauded NELS out of at least $245,000.00. SOF ¶¶ 22-23.[2] The Court

sentenced Plaintiff to six months' imprisonment. SOF ¶ 24.

Plaintiff's fraud and embezzlement placed NELS in an unstable financial

position, and caused the NELS Entities to default on various provisions of its

lender agreements, jeopardizing the NELS Entities' relationships with its lenders.

SOF ¶ 25. At the time of Plaintiff's termination, the NELS Entities had

banking/lender relationships with three entities, each of which was subject to

multiple financial and other covenants that the NELS Entities must satisfy. SOF ¶¶

28, 37. In particular, each agreement set forth numerous events of default and

provided the lender with various remedies in the event of default, including

refusing to authorize any further payments to NELS, and/or calling the loans for

full repayment. SOF ¶¶ 38-42. Further, these agreements required lender approval

for various actions, including repurchasing any company stock. SOF ¶¶ 69-71.

---

[2] It is undisputed that Plaintiff pled guilty to an Information charging him with
causing NELS to suffer losses of "at least $245,000." SOF ¶ 23. As demonstrated
by Mr. Winneg's affidavit, however, the direct financial harm suffered by NELS as
a result of Plaintiff's conduct was actually much greater than that ($420,533.00).
See Winneg Aff. Ex. E.

Near immediately following the disclosure of Plaintiff's wrongful and illegal conduct, NELS informed its lenders that it had uncovered fraud and likely other wrongdoing by Plaintiff. SOF ¶¶ 50-51. In the months that followed, NELS was in frequent communications with its lenders, to ensure NELS was taking steps to secure the financial soundness of the NELS Entities, and two partners personally paid one lender a total of $51,300.00 to demonstrate personal support for the business. SOF ¶¶ 60-62. While the lenders reflected a willingness to work with NELS, the lenders also issued formal notices of default, reiterating the lenders' entitlement to exercise all rights and remedies available under the lender agreements. SOF ¶¶ 53-56. Such action would have forced the NELS Entities into bankruptcy. SOF ¶ 63.

As NELS was in breach of multiple covenants with its lenders, and any one of the lenders could have refused to provide any further lending to the NELS Entities and/or immediately called the entire amount of the outstanding loans for full repayment, it is inconceivable that the three lenders would have approved a payment of $100,000 to the person who had just been identified as having perpetrated a crime upon NELS resulting in a perilous financial situation. SOF ¶¶ 72-75. Indeed, upon learning of Plaintiff's conduct and its impact on NELS's finances, NELS's senior lender directed NELS not to make any interest payment to the junior lender until the defaults were addressed and remedied. SOF ¶ 57. In turn,

John R. Strahley, then-relationship manager for NELS's junior lender, Advantage Capital Connecticut Partners I, Limited Partnership ("Advantage"), affirms that, given NELS's multiple levels of default, he would not have recommended that Advantage approve a payment of $100,000 to Plaintiff to repurchase his shares. SOF ¶ 75. Beyond this, payment of $100,000 to Plaintiff at a time when NELS could not even make interest payments on its various loans, in and of itself, was not consistent with NELS's own cash requirements. SOF ¶¶ 66-68. This is fully reflected in the Affidavit of Robert Winneg, President of New England Capital Partners.[3] Mr. Winneg's Affidavit is fully supported by numerous exhibits, including the relevant agreements with and notices of default from NELS's lenders, an itemization of direct costs incurred by NELS as a result of Plaintiff's fraud, and other relevant documents from Plaintiff's employment at NELS and subsequent criminal matter.

At a hearing conducted on June 11, 2020, Plaintiff argued that he was entitled to additional discovery, Tr. at 10-11; however, the judge determined that it was appropriate for NELS to file a Motion for Summary Judgment.[4]

---

[3] Mr. Winneg's Affidavit, and the exhibits attached thereto, are included with NELS's Statement of Undisputed Material Facts.

[4] Plaintiff no doubt will respond that he "cannot present facts essential to justify [his] opposition" to the instant motion, see Fed. R. Civ. P. 56(d).  The fact is that Plaintiff already had an opportunity to request discovery which would contradict the Winneg Affidavit and attached exhibits pertaining to the conditions precedent.

## I.     STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment must be granted where the moving party shows that the materials in the record demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "[O]nce the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law," the burden shifts to the non-moving party. Phibro Animal Health U.S., Inc. v. Cornerstone AG Prod., 2006 WL 2570839, at *2 (D.N.J. Sept. 5, 2006) (unreported), amended in part, 2006 WL 3733022 (D.N.J. Dec. 18, 2006) (unreported), and aff'd, 271 F. App'x 214 (3d Cir. 2008) (unpublished), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

By Order dated March 2, 2020, this Court ordered Plaintiff to file "a request for discovery **centered on** the issues set forth" in the Winneg Affidavit, namely, NELS's cash requirements and the consent of third parties. ECF No. 39 (emphasis added). Plaintiff failed to identify any such focused discovery, instead submitting broad discovery requests unrelated to the facts presented in the Winneg Affidavit. At the status conference, Plaintiff argued that he was entitled to discovery to challenge the veracity of the Winneg Affidavit. Here, however, the Winneg affidavit is supported by multiple contemporaneous documents, including the loan documents themselves and the multiple notices of default, the key evidence supporting the pending motion for summary judgment. In short, no discovery is needed with respect to the conditions precedent.

requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986) (emphasis in original). "An issue involving a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Mennen Co. v. Atl. Mut. Ins. Co.</u>, 1999 WL 33654297, at *2 (D.N.J. Oct. 26, 1999) (unreported) (citation omitted). Accordingly, "[f]actual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson</u>, 477 U.S. at 248.

While the Court must consider all facts in the light most favorable to the non-moving party, Plaintiff "cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment." <u>Uddoh v. Selective Ins. Co. of Am.</u>, 2014 WL 7404540, at *3 (D.N.J. Dec. 29, 2014) (unreported) (citations omitted); <u>see also</u> <u>Mennen Co.</u>, 1999 WL 33654297, at *2 ("the nonmoving party may not rest upon mere allegations or denials of its pleading…but must produce sufficient evidence to reasonably support a jury verdict in its favor"), citing <u>Anderson</u>, 477 U.S. at 248. Accordingly, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Id</u>. Rather, Plaintiff must "present evidence that a genuine issue of material fact compels a trial." <u>Uddoh</u>, 2014 WL 7404540, at *3, citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

## II.   PLAINTIFF'S CLAIM MUST FAIL, AS THE UNDISPUTED FACTS DEMONSTRATE THAT THE CONDITIONS PRECEDENT TO THE REPURCHASE OF PLAINTIFF'S SHARES WERE NOT SATISFIED, AS A RESULT OF PLAINTIFF'S OWN CRIMINAL CONDUCT.

"Under New Jersey law, parties to a contract 'are at liberty to agree on one or more conditions precedent upon which their liability will depend.'" Watson v. City of Salem, 934 F. Supp. 643, 660 (D.N.J. 1995), citing State Farm Mutual Automobile Ins. Co. v. Anderson, 70 N.J. Super. 520, 527 (App. Div. 1961). "A condition precedent has been defined as a 'fact or event occurring subsequently to the making of a valid contract and which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available.'" Id., citing Moorestown Mgmt. v. Moorestown Bookshop, Inc., 104 N.J. Super. 250, 262 (Ch. Div. 1969); Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 224-225, n.7 (3d Cir. 1983) (where proper execution of note was a condition precedent to defendant's obligation to pay off loan, the fact that the note was never executed precluded "any action…for enforcement of [defendant's] obligation to repay," and district court properly entered summary judgment in favor of defendant).

Here, the Separation Agreement executed by Plaintiff in connection with his termination provided that NELS would use reasonable commercial efforts to

9

acquire the Vicchairelli Stock, subject to two critical conditions precedent,

specifically:

> The Company agrees to use reasonable commercial
> efforts, to the extent consistent with its own cash
> requirements and subject to the consent of third parties to
> the extent required under the Company's contractual
> agreements with such third parties, to acquire such shares
> in three equal installments…

SOF ¶¶ 10-12.[5] Accordingly, ***both*** of these conditions must be satisfied.[6]

---

[5] The Stock Purchase Agreement entered into between the parties at the commencement of Plaintiff's employment did not require NELS to repurchase Plaintiff's stock upon his termination. Rather, the SPA provided that NELS "***may repurchase***" the stock upon termination of employment, and that NELS's "exercise of the Right to Repurchase is subject to any covenants or restrictions contained in any loan documents to which the Company or any subsidiary of the Company is a party." SOF ¶ 6.

[6] As previously presented to the Court, Plaintiff's Complaint does not allege what commercially reasonable efforts NELS has made, or failed to make, regarding these conditions precedent, and NELS submits that summary judgment is warranted on that basis alone. Robert Wood Johnson Univ. Hosp. at Hamilton, Inc. v. SMX Capital, Inc., 2013 WL 4510005, at *2-4 (D.N.J. Aug. 26, 2013) (unpublished) (granting motion to dismiss breach of contract claim where plaintiff did not allege "how Defendant's alleged failure to make commercially reasonable efforts to satisfy the conditions precedent constitutes a breach of contract because the parties' rights and obligations under the Agreement never became binding since the conditions precedent were not satisfied," and did not "allege what commercially reasonable efforts or steps, if any, Defendant made or failed to make regarding the conditions precedent"); Traisman v. Khmelnitsky, 2020 WL 2847751, at *4-5 (D.N.J. June 1, 2020) (unpublished) (granting defendant's motion to dismiss breach of contract claim where plaintiff did not contest that agreement "imposed conditions precedent to his right to relief, or that the complaint fails to plead compliance with them").

10

As demonstrated by NELS's Statement of Undisputed Material Facts, and the attached affidavits and exhibits, the conditions precedent for repurchase of the Vicchairelli Stock, as set forth in the unambiguous Separation Agreement, have not been met. Plaintiff's conduct in embezzling funds in the course of his employment jeopardized NELS's relations with its lenders, causing NELS to default on its lender agreements and placing the company in a precarious financial position. SOF ¶ 25. Accordingly, there is no basis to require NELS to repurchase Plaintiff's shares.

       a.     *The undisputed material facts demonstrate that repurchase of the Vicchairelli Stock was not "consistent with [NELS's] own cash requirements."*

As conclusively established by the Winneg Affidavit, and the exhibits annexed thereto, the repurchase of the Vicchairelli Stock was not "consistent with [NELS's] own cash requirements." SOF ¶¶ 66-68. Notably, NELS's financial situation had been adversely affected – to the brink of bankruptcy – due to ***Plaintiff's own criminal conduct*** during the course of his employment. Shortly after Plaintiff's termination, NELS discovered that Plaintiff had engaged in fraud and embezzlement of NELS's funds from January 2012 through August 2014, including issuing himself unauthorized payroll checks and using the corporate credit card for hundreds of thousands of dollars of personal expenditures. SOF ¶¶ 20-21.

Plaintiff's criminal conduct placed NELS in a perilous financial position, and jeopardized the NELS Entities' relationships with its lenders. SOF ¶ 25. Specifically, NELS's Line of Credit worked in a manner similar to a checking account, with the lenders authorizing payment on a day-to-day basis on a formula based on collateral which in turn is based on accounts receivable and unused inventory. SOF ¶ 33. Plaintiff's conduct caused the NELS Entities to default on various provisions of its lender agreements, which gave its lenders the right to decline to make further loans or issue Letters of Credit, and to declare all of NELS's obligations as immediately due and payable. SOF ¶¶ 53-56. If either lender took such action it would have led to an immediate financial crisis and failure of the NELS Entities, that in turn could lead to near-immediate bankruptcy and the loss of employment for hundreds of individuals. SOF ¶ 63.

In short, Plaintiff's conduct forced the company into the financial position that resulted in default on multiple covenants of its lender agreements, and as a result, NELS had no ability to borrow cash to be used for the non-operating purpose of purchasing the Vicchairelli Stock. SOF ¶¶ 66-68. Accordingly, repurchase of the Vicchairelli Stock was not "consistent with [NELS's] own cash requirements," and, as this condition precedent was not satisfied, NELS did not breach the Separation Agreement, as a matter of law. See First Atl. Leasing Corp. v. Tracey, 738 F. Supp. 863, 867-868 (D.N.J. 1990) (granting summary judgment

in favor of employer, where preamble provided that agreement would take effect

"following the date of completion of the [employer's] conversion" from a mutual

association to a stock association, and there was "no genuine issue of material fact

that a condition precedent to the validity of this employment contract never

occurred"); see also Watson, 934 F. Supp. at 660 (granting summary judgment to

defendants, where "Plaintiff's successful completion of the background

investigation was clearly a valid condition precedent to the creation of an

enforceable contract" and there was "no dispute as to the fact that Plaintiff failed to

successfully complete the background investigation").

Reed Elsevier, Inc. v. Inherent.com, Inc., 2006 WL 3827414, at *3 (D.N.J.

Dec. 27, 2006) (unreported) is illustrative. In Reed, the parties executed a Letter

Agreement regarding plaintiff's "preliminary non-binding indication of interest" in

acquiring defendant's business. The agreement set forth "conditions precedent" to

the potential purchase, including "completion of due diligence investigations." Id.

The plaintiff undertook the due diligence review, and subsequently advised

defendant "that it no longer had any interest in moving forward with the proposed

transaction." Id. The court noted that plaintiff's "stated dissatisfaction with its due

diligence investigation and resultant decision to terminate the Letter Agreement

fall squarely within the terms of the Letter Agreement." Id. at *6. Accordingly, the

court determined "that, as a matter of law, Defendant has failed to raise any

13

genuine issue of material fact related to whether [plaintiff] breached the Letter

Agreement," as plaintiff's "decision to terminate the Letter Agreement…did not

constitute a breach." Id.

Similarly here, the undisputed material facts reflect that Plaintiff's conduct

caused NELS enormous financial harm resulting in default on each of its loan

agreements; accordingly, there can be no genuine dispute that the repurchase of

Plaintiff's shares, at a cost of $100,000.00, was not "consistent with [NELS's] own

cash requirements." SOF ¶¶ 25, 66-68. As this unambiguous condition precedent to

the repurchase was not satisfied, Plaintiff cannot demonstrate, as a matter of law,

that NELS breached the Separation Agreement. See, e.g., Schweikert v. Baxter

Healthcare Corp., 2015 WL 4578443, at *10-12 (D.N.J. July 29, 2015)

(unreported) (granting summary judgment because bonus agreement's language

was "unambiguous in creating a condition precedent that Plaintiff remain

a…employee" until a certain date to be eligible for bonus, such that defendants did

not breach the agreement in refusing to pay plaintiff the bonus due to plaintiff's

earlier involuntary termination).

> b. *It is inconceivable that NELS's lenders would consent to the repurchase of Plaintiff's shares, in light of Plaintiff's criminal conduct and NELS's precarious financial position.*

In addition, the Separation Agreement expressly provided that any

repurchase of the Vicchairelli Stock was "subject to the consent of third parties to

the extent required under the Company's contractual agreements with such third parties…" <u>SOF ¶ 12</u>.  Given Plaintiff's fraud and embezzlement, it was unthinkable that NELS could obtain the consent of its lenders to repurchase the Vicchairelli Stock and, in fact, the relationship manager for one lender has affirmed that he would not have recommended approval of such repurchase. <u>SOF ¶¶ 69-5</u>.

As more fully set forth in NELS's Statement of Facts, the NELS Entities had banking/lender relationships with several entities at the time of Plaintiff's termination, including a Line of Credit with Rockland Trust Company ("Rockland"), term loans with Advantage, and a lender relationship with Ironwood Mezzanine Fund LP ("Ironwood") (collectively, the "Lenders"). <u>SOF ¶¶ 28-32</u>.

NELS's contractual agreements with these third parties required very specific Lender approval for various actions. <u>SOF ¶¶ 69-71</u>. In particular, Section 15(i) of the Rockland Agreement prohibits NELS from purchasing or otherwise acquiring, "directly or indirectly, any such equity capital, securities or instruments…except as expressly permitted pursuant to the Intercreditor Agreement." <u>SOF ¶ 70</u>. The Advantage Agreement similarly limits NELS's ability to "repurchase any of its Stock…or make any distribution or pay any indebtedness owing by it to any of its members, Obligors, Affiliates, or other holders of Stock in

15

Borrower." <u>SOF ¶ 71</u>. Each of these contractual provisions would be implicated by NELS's repurchase of the Vicchairelli Stock.

However, Plaintiff's embezzlement of Company funds caused NELS to be in breach of multiple covenants with all three of its Lenders. <u>SOF ¶ 72</u>. NELS informed its Lenders of the fraud and other wrongdoing by Plaintiff as soon as it was discovered, including the excess compensation payments that Plaintiff made to himself without authorization and the fraudulent American Express charges made by Plaintiff. <u>SOF ¶ 52</u>.

While NELS's Lenders reflected a willingness to work with NELS, each Lender issued a Notice of Default, reflecting that the Lender was "entitled to immediately and without further notice exercise any or all of the rights and remedies available to it under the Loan Agreement, under the ancillary loan documents and under applicable law." <u>SOF ¶¶ 53-56</u>.[7] Most importantly, any one of the Lenders could have refused to provide any further lending to the NELS Entities and/or immediately called the entire amount of the outstanding loans for full repayment due to NELS's default. <u>Id</u>.

---

[7] Unbeknownst to NELS, the company was already in default under the Advantage and Rockland Agreements as of August 2014, as Plaintiff had failed to timely make the interest payment to Advantage (in the amount of $51,300) due on July 15, 2014. <u>SOF ¶ 46</u>. NELS did not learn of Plaintiff's failure to make this payment until shortly before Plaintiff's termination. <u>SOF ¶ 47</u>.

Given NELS's default, it is unthinkable that the Lenders would have approved a payment of $100,000 to Plaintiff, as "required under the Company's contractual agreements" with its Lenders, the second of the two conditions precedent under the Separation Agreement. SOF ¶¶ 72-75. In fact, upon learning of Plaintiff's conduct and its impact on NELS's finances, Rockland (the senior lender) directed NELS not to make any interest payment to Advantage (the junior lender) until the defaults with Rockland were addressed and remedied. SOF ¶ 57. This resulted in no further interest payments to Advantage for the months of August, September and October of 2014 and, as a result, certain partners of the NELS Entities personally paid Advantage $51,300.00, at Advantage's request, to demonstrate personal support for the business. SOF ¶¶ 57-61.

During this period of time, NELS was in frequent contact with the primary relationship manager for Advantage regarding the investigation into Plaintiff's wrongdoing and the steps being taken to ensure NELS's financial soundness. SOF ¶ 62. As more fully set forth in the affidavit of Mr. Winneg – who is the lead liaison for all banking/lender relationships for the NELS Entities – trust between the lender and the owners/principals of NELS is vital to the Lender relationships, and constant and transparent communication is required. SOF ¶¶ 26, 34-35. While Mr. Winneg did not ask the literal question to the Lenders whether NELS Holdings could spend $100,000 for purchase of the shares, he had detailed to the Lenders the

fraud and other wrongdoing that had been perpetuated by Plaintiff, which resulted in the multiple levels of default. SOF ¶ 74. Given this, and the fact that NELS could not even make interest payments on its various loans, it was unthinkable that all three lenders would consent to the repurchase of Plaintiff's shares. As reflected in the Affidavit of John Strahley, the primary manager for Advantage's lender relationship with NELS at that time, he would not have recommended that Advantage approve a $100,000 payment from NELS to Plaintiff for such repurchase. SOF ¶ 75. Accordingly, as it is inconceivable that the Lenders would have authorized payment of $100,000 for the equity, a condition precedent for that action, summary judgment must be granted in NELS's favor of as a matter of law.

### III. SUMMARY JUDGMENT IN FAVOR OF NELS IS WARRANTED, AS PLAINTIFF'S CLAIM IS BARRED BY THE DOCTRINES OF UNCLEAN HANDS AND EQUITABLE FORFEITURE.

Beyond and without regard to whether the conditions precedent to the repurchase of the Vicchairelli Stock were satisfied, Plaintiff is barred from seeking to enforce any obligation for NELS to repurchase the shares because of Plaintiff's own conduct. Plaintiff admittedly engaged in criminal conduct in embezzling NELS's funds during his employment, and taking deliberate steps to conceal such conduct from NELS. SOF ¶¶ 22-24. Accordingly, Plaintiff's claim seeking an order requiring NELS to repurchase the Vicchairelli Stock must be barred by the doctrines of unclean hands and equitable forfeiture.

18

      a.    *As Plaintiff is admittedly guilty of engaging in fraud in the course of his employment, and NELS was unaware of such conduct when entering into the Separation Agreement, Plaintiff's claim must be barred by the doctrine of unclean hands.*

"It is axiomatic under the doctrine of unclean hands that he who comes into equity must come with clean hands," and a "court should not grant equitable relief to a party who is a wrongdoer with respect to the subject matter of the suit." <u>Jay Dad Assocs., L.L.C. v. C&G Mgmt. Corp.</u>, 2009 WL 17940, at *10 (N.J. Super. Ct. App. Div. Jan. 2, 2009) (unpublished) (internal citations, quotation marks, and brackets omitted). The doctrine of unclean hands will deny equitable relief "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities." <u>Paramount Aviation Corp. v. Agusta</u>, 178 F.3d 132, 147 n.12 (3d Cir. 1999) (internal citation and quotation marks omitted); <u>see also</u> <u>Starland v. Fusari</u>, 2013 WL 12149123, at *2 (D.N.J. Nov. 15, 2013) (unpublished) (the fact that a plaintiff "seeks money damages is, in itself, no reason to bar [defendant] from pursuing [the] equitable defense of unclean hands with respect to [plaintiff's] equitable claims…") (citations omitted).

Notably, "one's misconduct need not necessarily have been of such a nature as to be punishable as a crime to invoke the doctrine of unclean hands." <u>See</u>, <u>e.g.</u>, <u>Hageman v. 28 Glen Park Assoc., L.L.C.</u>, 402 N.J. Super. 43, 45, 952 A.2d 533,

534 (Ch. Div. 2008) (plaintiff's numerous false statements in prior foreclosure action barred plaintiff's allegation that defendants engaged in fraudulent foreclosure scam) (internal citation and quotation marks omitted); Jay Dad Assocs., L.L.C., 2009 WL 17940, at *9-10 (court "denied plaintiff the equitable relief of specific performance due to its unclean hands" in "proposing a tenant in bankruptcy to the ultimate financial detriment of defendant"). Here, the undisputed facts establish that Plaintiff defrauded NELS by using the corporate credit card to charge hundreds of thousands of dollars for personal expenditures, and issuing unauthorized paychecks to himself. SOF ¶¶ 20-21. Plaintiff's conduct resulted in a criminal conviction and sentence of imprisonment, and caused each of NELS's lenders to issue a notice of default. SOF ¶¶ 22-24.

Moreover, Plaintiff's fraudulent and criminal conduct is "directly related to the matter at issue" in this action – NELS's obligations pursuant to the Separation Agreement executed in connection with Plaintiff's termination. Paramount Aviation Corp., 178 F.3d at 147 n.12 (internal citation and quotation marks omitted). NELS decided to terminate Plaintiff's employment in 2014 and, as NELS was unaware of fraud or wrongdoing of any kind by Plaintiff at that time, NELS offered Plaintiff the Separation Agreement at issue in this case, agreeing to use reasonable commercial efforts to repurchase the Vicchairelli Stock, subject to the conditions precedent. SOF ¶¶ 8-12.

Under these circumstances, application of the doctrine of unclean hands is clearly warranted to bar Plaintiff from seeking to recover $100,000 from the company he intentionally defrauded for a sum far in excess of that amount. Notably, Plaintiff – through counsel – initially admitted to "certain improprieties regarding activities he was involved in during his employment" by letter dated September 9, 2014 – just days after Plaintiff signed the Separation Agreement on August 26, 2014. SOF ¶¶ 13, 18. Accordingly, NELS respectfully requests that this Court enter summary judgment in its favor, due to Plaintiff's indisputably unclean hands in engaging in fraudulent conduct during the course of his employment and concealing the same from NELS until after the Separation Agreement was executed. See, e.g., Sansum v. Fioratti, 128 A.D.3d 420, 420-421 (N.Y. App. Div. 2015) (plaintiff's claim for equitable relief "should have been dismissed under the doctrine of unclean hands" where plaintiff pled guilty to embezzling from his employer); Hageman, 402 N.J. Super. at 49-56 (noting that it "is not typical for a miscreant of the likes of plaintiff to have the audacity to seek affirmative relief from a court of equity," and dismissing plaintiff's complaint where permitting plaintiff "the potential for recovery would also reward him for his prior deceitful and fraudulent behavior").

      *b.*     *Plaintiff's claim should similarly be barred by the doctrine of equitable forfeiture, as Plaintiff engaged in a pattern of fraud from January 2012 through August 2014, and his compensation was effectively unearned during that time.*

NELS further submits that Plaintiff's claim should be barred by the doctrine of equitable forfeiture. "Employees who defraud their employers…run the risk of…forfeiture of the right to compensation, and other legal and equitable remedies." Cameco, Inc. v. Gedicke, 157 N.J. 504, 519-522, 724 A.2d 783, 790-791 (1999) ("in addition to more traditional damages, an employer may seek forfeiture of its employee's compensation" when the employee has breached his duty of loyalty). "The remedy [of forfeiture] is substantially rooted in the notion that compensation during a period in which the employee is disloyal is, in effect, unearned." Kaye v. Rosefielde, 223 N.J. 218, 222-233, 121 A.3d 862, 865-871 (2015) ("a trial court may order disgorgement of an employee's compensation as a remedy for a breach of loyalty in an appropriate case"). This remedy is plainly appropriate in this case, given Plaintiff's egregious criminal conduct during the course of his employment.

In Sevenson Envtl. Servs., Inc. v. Diversified Royalty Corp., for example, the employer argued that the employee stole in the course of his employment as project manager, writing unauthorized checks to himself and withdrawing more cash than needed to pay per diems. 2018 WL 5033750, at *1-3 (D.N.J. Oct. 16, 2018) (unreported) (deeming movant's material facts as undisputed where motion

was unopposed). The thefts were not discovered until after the employee's termination. Id. The employer moved for summary judgment on its breach of fiduciary duty claim, arguing that the employee's "breaches were so egregious that the equitable remedy of wage disgorgement is warranted." Id. at *3.

The court noted that loyalty consists of "certain very basic and common sense obligations," including "the duty to refrain from repeatedly stealing from the employer over the course of several years." Id. at *3. The court considered the fact that defendant was "a supervisory employee in which [the employer] entrusted great responsibility," and was "very well compensated." Id. Further, the court acknowledged that defendant "was repeatedly disloyal over the span of at least seven years," and took certain steps "to hide his thefts – including falsifying business records," causing financial losses "which must have adversely affected [the employer's] business." Id. at *3-4. Accordingly, the court granted the employer's "Motion for Summary Judgment as to the breach of fiduciary duty claim, and the attendant claim for equitable disgorgement of compensation." Id. at *4.

A similar result should be reached here. Plaintiff was "very well compensated" and was entrusted with significant responsibility as the Chairman and Chief Executive Officer of the NELS Entities. SOF ¶ 2. Plaintiff not only stole from NELS over a period of several years, but took numerous steps to conceal such

theft from NELS until after the termination of his employment. SOF ¶ 22.

Plaintiff's criminal conduct – for which he pled guilty and served a period of

imprisonment – had disastrous financial consequences for NELS, causing NELS to

default on its Lender Agreements and risking complete failure of the NELS

Entities. SOF ¶¶ 23-25, 66, 74. Accordingly, Plaintiff's claim should be barred by

the doctrine of equitable forfeiture.

                          Respectfully submitted,


Dated July 14, 2020       _____
                          Richard J. Allen, Jr.
                          **KIPP & ALLEN, L.L.P.**
                          52 Chestnut Street
                          Rutherford, New Jersey 07070
                          Telephone: (201) 933-3633
                          E-Mail: rallen@kippallenlaw.com

                          Kenneth M. Bello (admitted pro hac vice)
                          **BELLO WELSH LLP**
                          125 Summer Street, Suite 1200
                          Boston, Massachusetts 02110
                          Tel: (617) 247-4100
                          Fax: (617) 247-4125
                          E-mail: kbello@bellowelsh.com

                          Attorneys for Defendant
                          NEW ENGLAND LINEN SUPPLY
                          COMPANY, INC.

## <u>CERTIFICATE OF SERVICE</u>

I, Richard J. Allen, Jr., Esq., certify that I am the attorney for the Defendant in the within action, and that on this date I did cause a true and correct copy of the following documents: Defendant's Brief in Support of Motion for Summary Judgment to be filed electronically with the Court, and to be served concurrently via ECF upon counsel for Plaintiff as follows:

Marc A. Lario, Esq.
MARC A. LARIO & ASSOCIATES
89 North Haddon Avenue
Haddonfield, New Jersey 08033
Attorney for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct.


_____
Richard J. Allen, Jr.

July 14, 2020