UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL VICCHAIRELLI | : | |
| Plaintiff, | : | Civil Action No. 19-12989 |
| v. | : | **OPINION** |
| NEW ENGLAND LINEN SUPPLY COMPANY, INC. | : | |
| Defendant. | : | |

This matter comes before the Court on the Motion for Summary Judgement filed by New England Linen Supply Company, Inc. ("NELS") against Plaintiff Michael Vicchairelli ("Plaintiff") [Dkt. 53]. For the reasons discussed below, the Court will deny NELS's motion without prejudice.

## I. Factual and Procedural Background

Plaintiff worked as the CEO of NELS from approximately March 4, 2007 to approximately July 2014. [Dkt. 53-32, SMUF ¶¶ 2, 8].[1] On or around July 20, 2009, Plaintiff purchased preferred and common stock in NELS's parent company, NELS Holdings, Inc. (the "Stock") for $100,000 pursuant to a Stock Purchase Agreement (the "SPA"). [SMUF ¶¶ 4–5; Dkt. 53-3].

In or around July 2014, NELS terminated Plaintiff's employment. [SMUF ¶ 8]. In connection with this termination, NELS and Plaintiff entered a separation agreement (the "Separation Agreement") which, among other things, addresses NELS's potential buyback of the Stock. [SMUF ¶ 10]. The Separation Agreement states in part that

---

[1] "SMUF" refers to NELS's statement of material undisputed facts filed under Local Rule 56.1(a) at Dkt. 53-32.

1

> [e]mployee agrees that he will sell [the Stock] to [NELS] for an aggregate purchase price of $100,000. The Company agrees to use reasonable commercial efforts, to the extent consistent with its own cash requirements and subject to the consent of third parties to the extent required under the Company's contractual agreements with such third parties, to acquire such shares in three equal installments, with one-third of the shares of Preferred Stock and one-third being acquired in each installment, on the last day of September, October, and November, or as soon thereafter as reasonably practicable.

[Dkt. 53-4 ¶ 4]. Plaintiff signed the Separation Agreement on August 26, 2014 but NELS never purchased Plaintiff's Stock.

Shortly after Plaintiff's termination, NELS discovered misconduct by Plaintiff during his tenure as CEO. NELS found that Plaintiff used a corporate credit card for personal expenditures and directed nine unauthorized paychecks to himself. [SMUF ¶¶ 21–22]. On October 19, 2017, after the United States Attorney for the District of New Jersey investigated the matter, Plaintiff pled guilty to wire fraud for defrauding NELS out of at least $245,000. [SMUF ¶¶ 22–23]. Plaintiff was sentenced to six months' imprisonment and ordered to pay restitution. [SMUF ¶ 24]. NELS also alleges that on July 15, 2014, Plaintiff failed to make an interest payment to Advantage Capital Connecticut Partners I, Limited Partnership ("Advantage") in connection with term loans that NELS had with Advantage. [53-19 at 19 n.7].

After NELS learned of Plaintiff's conduct, it received default notices from Advantage and two other institutions with whom NELS had lines of credit, namely, Rockland Trust Company ("Rockland") and Ironwood Mezzanine Fund LP ("Ironwood") (collectively, the "Lenders").[2] [*Id.*; SMUF ¶¶ 28–32]. Rockland, Advantage, and Ironwood all held NELS in

---

[2] NELS entered into credit agreements which each of the three Lenders, but NELS only attached the agreements with Advantage and Rockland as exhibits. The Advantage and Rockland credit agreements contain two common terms relevant here. First, they require NELS to maintain a "Fixed Charge Coverage Ratio of not less than 1.15 to 1.00 as of the end of each Fiscal Quarter

2

default for failing to maintain a "Fixed Charge Coverage Ratio of not less than 1.15 to 1.0." [Dkt. 53-14 to 53-16]. Advantage also identified the above-referenced failure to pay interest as a default event. [Dkt. 53-15 at 2]. Under NELS's agreements with the Lenders, the Lenders could refuse to authorize further payments to NELS or demand full loan repayment altogether. [SMUF ¶¶ 40–42]. According to NELS, "Plaintiff's fraud and embezzlement" caused these defaults and placed NELS in an "unstable financial position." [Dkt. 53-19 at 7].

Plaintiff filed this lawsuit in the Superior Court of New Jersey to compel specific performance of the Separation Agreement and to require NELS to buy-back the Stock at a "reasonable market value." [Dkt. 1-1]. NELS removed the case to this Court through diversity jurisdiction [*see id.*] and later moved for judgment on the pleadings. [Dkt. 16]. The Court held a hearing on NELS's motion, during which the Court determined that the that provisions concerning Stock buyback outlined in the Separation Agreement formed the crux of the parties' dispute. [*See* Dkt. 40]. The Court then issued an order denying NELS's motion for judgment on the pleadings without prejudice, instructing NELS to provide an affidavit outlining its position with respect to the stock buyback provisions, and permitting Plaintiff to request limited discovery "centered on the issues set forth in the Affidavit." [Dkt. 39].

As instructed, NELS provided an affidavit to Plaintiff and the discovery period commenced. The Court then held a status conference where Plaintiff represented that NELS did not produce any discovery, and where the Court then directed NELS to file a motion for

---

on a trailing twelve-month basis." [Dkt 53-9 at ¶ 15(d); Dkt. 53-11 ¶ 4.3, 53-13 at 11]. Exh. I at Exh. K at 2]. Second, the Advantage and Rockland agreements prevent NELS from purchasing securities, including its own stock. [Dkt. 53-10 ¶ 3.5 (Advantage); Dkt. 53-9 at ¶ 15(i) (Rockland)].

summary judgment, and instructed Plaintiff to raise his discovery concerns in his response to NELS's motion. [Dkt. 49, 50].

## II. Standard of Review

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the

4

nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Andersen*, 477 U.S. at 256–57.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. Analysis

NELS argues that it is entitled to summary judgment on three grounds. First, NELS argues that Plaintiff cannot establish that the two "conditions" for stock buyback outlined in the Separation Agreement were satisfied. [Dkt. 53-19 at 12]. Even if those conditions were satisfied, NELS argues that the unclean hands and equitable forfeiture doctrines bar Plaintiff's recovery. [Dkt. 53-19 at 21]. The Court will address each of these arguments in turn.

### a. Separation Agreement Conditions

The Separation Agreement requires NELS to use "reasonable commercial efforts" to purchase the Stock "to the extent consistent with [NELS's] own cash requirements and subject to the consent of third parties to the extent required under the Company's contractual agreements with such third parties." [Dkt. 53-4]. NELS argues that, under these terms, NELS has never had an obligation to purchase the Stock. [Dkt. 53-19 at 12–14]. NELS argues that the "cash requirements" and "third-party consent" provisions establish two conditions which must be satisfied before NELS must purchase the Stock, and that Plaintiff has no evidence that these conditions were satisfied. [Dkt. 53-19 at 12–14].

As discussed below, the Court finds that NELS is not entitled to summary judgment. By focusing on these two "conditions," NELS has overlooked its initial burden to establish as lack of triable issue as to its "commercially reasonable efforts to purchase the Stock. But NELS's arguments require the Court to confirm that the Separation Agreement's alleged "conditions" are, in fact, conditions. *See Bosshard v. Hackensack Univ. Med. Ctr.*, 345 N.J. Super. 78, 92, 783 A.2d 731, 740 (App. Div. 2001) ("The interpretation of the terms of a contract are decided by the court as a matter of law.").

### i. Construction of the Separation Agreement

"The parties to a contract 'may make contractual liability dependent upon the performance of a condition precedent.'" *Liberty Mut. Ins. Co. v. President Container, Inc.*, 297 N.J. Super. 24, 34, 687 A.2d 760, 766 (App. Div. 1997) (quoting *Duff v. Trenton Beverage Co.*, 4 N.J. 595, 604, 73 A.2d 578 (1950)). "A condition precedent is a fact or event occurring subsequently to the making of a valid contract which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available." *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 225 (3d Cir. 1983) (quoting *Moorestown Mgmt., Inc. v. Moorestown Bookshop, Inc.,* 104 N.J. Super. 250, 262, 249 A.2d 623, 630 (1969)).

The first step in addressing NELS's argument is to confirm that the "cash requirements" and "third-party consent" provisions are "conditions" and not promises.[3] Conditions precedent are "disfavored by the courts," *Marsa v. Metrobank For Savings, F.S.B.*, 825 F. Supp. 658, 664

---

[3] Plaintiff has never disputed that these two provisions are conditions and, recognized them as conditions during a hearing. [Dkt. 40 at 20:22–24] ("But essentially this is a breach of contract a simple breach of contract case with conditions."). Still, the Court must construe the contract in accordance with the law and the Separation Agreement's language, not with the parties' representations in hearings and pleadings. *See Bosshard*, 345 N.J. Super. at 92, 783 A.2d at 740.

6

(D.N.J.1993), *aff'd,* 26 F.3d 122 (3d Cir. 1994), because "failure to comply with a condition precedent works a forfeiture." *Liberty Mut. Ins. Co.*, 297 N.J. Super. at 34–35, 687 A.2d at 766 (quoting *Castle v. Cohen,* 840 F.2d 173, 177 (3d Cir. 1988)). For this reason, a contract term "will be construed as a promise" unless the condition precedent is "expressed in clear language." *Castle*, 840 F.2d at 177. *See also Marsa*, 825 F. Supp. at 664 ("[W]here the contract language is unclear, an obligation should be interpreted as a promise, rather than a condition precedent."). Thus, the Court must consider the Separation Agreement's construction to determine the legal effect of these two provisions. *See Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997) ("In determining the legal effect an agreement will have on an event the parties did not foresee, the process is construction….") (citations omitted).

> Interpretation of the contractual language is the first step towards proper construction. In the process of interpreting a contract, the court seeks to ascertain the intent of the parties. That inquiry, however, does not require a search for the subjective intent of the parties, but rather centers on the intent embodied in the language that the parties chose to memorialize their agreement.

*Id.* (citations and quotations omitted). *See also Duff*, 4 N.J. at 604, 73 A.2d at 583 ("The intention of the parties controls in the making and in the construction of contracts.").

To reiterate, the relevant Separation Agreement provisions are as follows:

> [e]mployee agrees that he will sell [the Stock] to [NELS] for an aggregate purchase price of $100,000. The Company agrees to use reasonable commercial efforts, to the extent consistent with its own cash requirements and subject to the consent of third parties to the extent required under the Company's contractual agreements with such third parties, to acquire such shares in three equal installments, with one-third of the shares of Preferred Stock and one-third being acquired in each installment, on the last day of September, October, and November, or as soon thereafter as reasonably practicable.

7

[Dkt. 53-4 ¶ 4]. The "cash requirements" and "third parties" provisions both qualify NELS's agreement to use "reasonable commercial efforts" to purchase Plaintiff's stock. But for two reasons, the "cash requirements" clause does not clearly identify a "fact or event" that must "exist or occur" before NELS must purchase Plaintiff's Stock. First, this clause does not specify a necessary "fact or event" because it does not define "cash requirements," indicate who decides whether NELS has adequate "cash requirements," or outline a procedure to determine whether sufficient "cash requirements" exist. Nor does it preclude NELS from bolstering its "cash requirements" through loans or lines of credit. Second, the term "consistent with" does not suggest that something needed to "exist or occur" before NELS would have to purchase Plaintiff's Stock. *Cf. Hill v. Com. Bancorp, Inc.*, No. CIV.09-3685 (RBK/JS), 2010 WL 2539696, at *5 (D.N.J. June 17, 2010) ("While particular language is not required, certain terms such as 'on condition that,' 'provided that' and 'if' are frequently used to express a condition."). *See also United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("'Consistent with' differs from 'authorized by.'") (citations and quotations omitted). The "to the extent" language in this clause does not define or clarify this vague "cash requirements" term. Because the "cash requirements" clause does not clearly establish a condition precedent, the Court must construe this provision as a promise. *Marsa*, 825 F. Supp. at 664 ("[W]here the contract language is unclear, an obligation should be interpreted as a promise, rather than a condition precedent.").

The "third parties" clause, however, clearly establishes a condition that requires NELS to obtain consent from third parties before purchasing Plaintiff's Stock. By definition, "subject to" means "contingent on … some later action." *Subject*, Merriam-Webster, https://www.merriam-webster.com/dictionary/subject (accessed June 14, 2021). Although the "third parties" clause does not identify the third parties, it states that consent is required "to the extent required under

the Company's contractual agreements with such third parties." [Dkt. 53-4 ¶ 4]. Thus, it is possible to ascertain which third parties require consent by reviewing NELS's contracts with such third parties.

In sum, the Court finds that, contrary to the parties' representations, the Separation Agreement contains only one condition, namely, the "third parties" condition. By contrast, the "cash requirements" provision is only a promise.

### ii. Rule 56 Analysis

As stated above, the "cash requirements" and "third parties" provisions qualify NELS's obligation to use "commercially reasonable effort" to purchase Plaintiff's stock. The Court now finds that NELS failed to satisfy its initial summary judgment burden to establish the absence of a triable issue of fact as to its "commercially reasonable efforts" to purchase Plaintiff's Stock. NELS provides an affidavit from Robert Winneg, President of NELS Holdings, which claims that Plaintiff's conduct placed NELS in default such that NELS could not afford to purchase the Stock. [Dkt. 53-1 ¶¶ 17–23]. To support Winneg's affidavit, NELS provides the default notices received from the Lenders. [Dkt. 53-14–16]. NELS argues that it had "no ability to borrow cash to be use for the non-operating purpose of purchasing the Vicchairelli Stock." [Dkt. 53-19 at 15]. NELS also provides a declaration from a former Advantage employee who managed NELS's account stating that he would not have recommended that Advantage approve the Stock repurchase. [Dkt. 53-33]. NELS further concludes that "it is inconceivable that the three Lenders would have approved a payment of $100,000 to Plaintiff as 'required under the Company's contractual agreements' with its Lenders, the second of the two conditions precedent under the Separation Agreement." [SMUF ¶ 73].

However, NELS has not argued or provided evidence showing that NELS made any effort to repurchase Plaintiff's Stock. When it entered the Separation Agreement, NELS promised to engage in "commercially reasonable efforts" to purchase the Stock. By definition, "effort" requires NELS to do something. But NELS has not identified a single affirmative step that it took to attempt purchase the Stock. NELS claims that it has "no ability to borrow cash" to purchase Plaintiff's Stock, but does not argue or offer evidence that it ever tried to obtain the necessary cash before refusing to purchase the Stock. Similarly, NELS argues that it is "inconceivable" that the Lenders would have approved the Stock buyback, but does not argue or provide evidence that it ever asked the Lenders to approve the Stock buyback. Thus, instead of making an "effort" to purchase Plaintiff's Stock as the Separation Agreement requires, NELS merely explains why it made no "effort" at all.

Even if NELS did make some "effort" to purchase Plaintiff's Stock, NELS would still not be entitled to summary judgment because whether that effort was "commercially reasonable" is an issue of fact for jury consideration. *See In re Am. Mortg. Holdings, Inc.*, 637 F.3d 246, 259 (3d Cir. 2011) (Rendell, J., concurring) ("[T]he determination of what is 'commercially reasonable' involves a fact-intensive inquiry, dependent on the totality of the circumstances...."); *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'n Sols., Inc.*, No. CV 15-405, 2019 WL 3022346, at *7 (E.D. Pa. May 23, 2019) ("Given the fact-intensive nature of this inquiry, it is typically a question for the jury.").

Ultimately, because NELS has not carried its initial burden to show that it made any effort to purchase Plaintiff's Stock, NELS is not entitled to summary judgment on these grounds.

### b. Unclean Hands

NELS next argues that the equitable doctrine of unclean hands precludes Plaintiff from recovering. "The doctrine of unclean hands will deny equitable relief 'when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities.'" *Saudi Basic Indus. Corp. v. ExxonMobil Corp.*, 401 F. Supp. 2d 383, 386 (D.N.J. 2005) (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999)). "[T]he primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, i.e., have a relationship, to the matters before the court for resolution." *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999). "[T]he connection between the misconduct and the claim must be close." *Id.* "[A]pplication of unclean hands rests within the sound discretion of the trial court." *Id.*

NELS argues that the unclean hands doctrine bars Plaintiff's claims here because Plaintiff's prior fraud against NELS is "directly related" to the issues presently before the Court, namely, whether NELS can or must buy Plaintiff's Stock pursuant to the Separation Agreement. [Dkt. 53-19 at 22–23]. Plaintiff argues that he cannot respond to any of NELS's arguments or offer contradictory evidence because NELS refused to provide information in discovery necessary to formulate a response. [Dkt. 56-2]. Plaintiff provides an affidavit describing his unfulfilled discovery requests. [Dkt. 56-2]. He argues that the Court should deny NELS's motion and permit Plaintiff to obtain the requested discovery under Federal Rule of Civil Procedure 56(d). [Dkt. 56 at 5–8].

Rule 56(d) states that

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (2) issue any other appropriate order.

Fed. R. Civ. P. 56(d). A Rule 56(d) affidavit must identify the "particular information [] sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988). The affidavit must be "specific" and cannot offer "[v]ague or general statements of what [the nonmoving party] hopes to gain through a delay for discovery." *Id.* (citing *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 230 (3d Cir. 1987)). If the nonmoving party "files an affidavit that addresses these three requirements with specificity, and especially when particular information, necessary to the successful opposition to summary judgment, is in the sole possession of the moving party … 'a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.'" *Malouf v. Turner*, 814 F. Supp. 2d 454, 459 (D.N.J. 2011) (quoting *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984)). "This is particularly true when there are discovery requests outstanding." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (citation omitted).

Plaintiff's affidavit states that NELS refused to respond to any discovery requests made throughout the course of this litigation. [Dkt. 56-2 ¶ 24]. In his brief, Plaintiff emphasizes that his unanswered discovery requests aim to "probe" the issues which the Court has identified as the "crux" of this case: NELS's commercially reasonable efforts to purchase Plaintiff's Stock, NELS's finances, and NELS's consent from third parties to purchase Plaintiff's Stock. [Dkt. 56

at 6–7]. With a few exceptions, Plaintiff's discovery requests target these three issues. [*See* Dkt. 56-3 at 48–67]. NELS does not deny that it has not produced any discovery to Plaintiff, but argues that Plaintiff's Rule 56(d) affidavit fails to identify specific facts or issues that discovery would reveal. [Dkt. 57 at 6–8].

NELS's refusal to respond to any discovery requests concerning these "crux" issues precludes the court from entering summary judgment in favor of NELS. "If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007). While the Court agrees that Plaintiff's Rule 56(d) affidavit could be more detailed, Plaintiff's supporting brief provides specific examples of issues that Plaintiff's discovery requests aim to evaluate, and explains that the discovery was not obtained earlier because NELS never produced the requested information. *See Diversant, LLC v. Carino*, No. CV 18-3155, 2018 WL 4562469, at *6 (D.N.J. Sept. 24, 2018) ("District courts typically grant requests for discovery under Rule 56(d) 'as a matter of course' regardless of whether the request is made by motion, affidavit, or declaration."). Taken together, the Court is satisfied that Plaintiff has adequately described the information he hopes to obtain in discovery, especially since NELS exclusively possesses the requested information and has not provided any discovery. *See Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 310 (3d Cir. 2011) (vacating district court's denial of the plaintiff's Rule 56(d) motion and entry of summary judgment against the plaintiff before the plaintiff was able to depose defendants).

The Court also finds that additional time for discovery is warranted because the Court may have unintentionally required Plaintiff to oppose the motion without adequate discovery by ordering NELS to file its summary judgment motion. "[I]t is well established that a court 'is

13

obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Doe*, 480 F.3d at 257 (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)). The Court is unwilling to compel Plaintiff to oppose NELS's motion without adequate discovery due to the Court's own scheduling order.

### c. Equitable Forfeiture

Finally, NELS argues that the doctrine of equitable forfeiture bars Plaintiff's claim. [Dkt. 53-19 at 25–27]. However, the cases which NELS cites to support this argument concern an employer's ability to recover damages from an employee who defrauds or breaches fiduciary duties owed to the employer. *See, e.g.*, *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 509, 724 A.2d 783, 785 (1999) ("This appeal concerns the liability of an employee for a breach of the duty of loyalty owed to his employer."). In other words, equitable forfeiture does not allow NELS to avoid its own obligations.

## IV. Conclusion

For the reasons discussed above, the Court will deny NELS's motion for summary judgment without prejudice. The Court will direct the parties to Magistrate Judge Williams to oversee limited discovery on the representations made in NELS's affidavit, including the "crux" issues discussed above, namely, NELS's financial ability to purchase Plaintiff's Stock; NELS's contracts with third parties that require NELS to obtain consent before purchasing Plaintiff's Stock; and NELS's efforts to purchase Plaintiff's Stock. Plaintiff is also entitled to discovery concerning the amount of loss incurred due to Plaintiff's misconduct as CEO for NELS.

June 24, 2021                                                      /s/ Joseph H. Rodriguez

                                                                              Hon. Joseph H. Rodriguez, U.S.D.J.